*Spalding, J.
The petitioners invoke the aid of this court in giving a construction to the wifi of John Mclntire, wherein a munificent bequest was made for the establishment of a school in the town of Zanesville, “ for the use of the poor children in said town.”
The single question raised and discussed is, whether the funds placed under the control of the president and directors of the Zanesville Canal and Manufacturing Company, for the support of such school, are so to be administered as to confine the benefit of them exclusively to poor children residing in the district which constituted the town of Zanesville, at the decease of the testator.
It is a rule in equity, that a gift of real or personal estate; ■either inter vivos, or by will, to promote education, is a charity. It is also considered as a settled rule, that such a gift to a charitable use is to receive a most liberal construction. It is not like penal enactments and contracts made in restraint of some general right, both of which are to be construed with the utmost strictness.
If an act of the general assembly, passed in 1815, inflicted a *415 penalty upon any person who should vend spirituous liquors within the town of Zanesville, its operation would bo restricted to such offenses as might be committed within the corporate limits as they existed at that date. Such is the spirit of our decision made at this term, in Robert Hall v. The State of Ohio. So^ where the plaintiff sought to restrain the defendant from carrying on the profession of a surgeon-dentist in “Great Russell street,” London, Malian v. May, 13 Meeson & Welsby, 511. The defendant had bound himself not to practice in “ London.” The city of London is an ancient city and county of itself, with well-defined limits—■ and “Great Russell street” is not within such city limits. The court said: “ Words were to be construed according to their strict and primary acceptation, unless from the context of the instrument, and the intention of the parties to be collected from it, they ^appear to be used in a different sense. London in its proper sense as the city of London, was intended, and not London in its popular or colloquial sense.”
The difficulty that exists in the application of the bounty of John Mc-Intire, has arisen from the fact that when he made his will, and at the time of his decease, Zanesville had been erected into a town-corporate, with certain well-defined boundaries, which have been subsequently, from time to time, extended, until finally it has attained a city charter, covering a greatly increased territory and population. If there had been no act of incorporation whatever, and the people living upon “ Zane’s Grant” had con-i nuod to call their place of residence by that good old Saxon name, “a town,” the trustees of this charity would have had no trouble in designating its beneficiaries, . . . for a town is a town still, whether it “ consist of twenty houses or of twenty thousand.”
So says the philologist, (Webster’s Dict. Unabridged), and so says the jurist (8 Carrington & Payne, 612), Pattison, Judge: “I do not see how I can say that 1 town ’ is to have two different meanings. It is very difficult to define what is a town in ordinary meaning. It varies from day to day; by the erection of new houses.” We think the increase in population, and the consequent extension in territorial limits of Zanesville, furnishes no sufficient reason for restricting the application of the Melntire school fund to the “blocks and lots” laid out and incorporated at the time of the testator’s decease, if he did not thus limit his benevolence, by the precise lan *416 guago of his bequest. That he did not use words requiring at our hands such a restricted application, we are well persuaded.
The testator has directed in his will, that the rents, issues, and profits of his estate be appropriated by his trustees to the use and support of a school “ which they are to establish in the town of Zanesville, for the use of the poor children in said town." The advocates of strict construction claim that Mr. Melntire intended to confine the selection of the objects of his bounty to the corporation of Zanesville as it existed in 1815. *Has he said so in his will ? So far from it, ho has omitted to use the name given to that corporation by the act creating it, which was passed January 21, 1814, to wit, the “ Borough of Zanesville,” and has used the words “ town of Zanesville,” as we think in their old, popular, and colloquial sense, which would designate the cluster of log cabins first erected on the village-plat of John Melntire and Jonathan Zane, as well as the wide-spread city with its teeming jjopulation.
If wo travel out of the will, however, and take a survey of the position that the testator occupied in respect to the inhabitants of Zanesville, at the time he conceived the generous purpose of making this bequest, every doubt, it seems to us, must be put at rest. This the law permits us to do. Tea, further—“it is obviously essential,” says a learned elementary writer, “that the judicial expositor should place himself as fully as possible in the situation of the person whose language he has to interpret; and, guided by the light thus thrown on the testamentary scheme, he may find himself justified in departing from a strict construction of the testator’s language, without allowing conjectural interpretation to usurp the place of judicial exposition." 1 Jarman on Wills, 363.
“At an early day,” says the counsel, “John McIntire, the testator, and Jonathan Zane, boing the owners, as tenants in common, of the section of land known as ‘ Zano’s Grant,’ on the Muskingum river, laid out, on a portion of said section, the town of Zanesville. Some time afterward they made partition, allotting to each in severalty, all the section except that part of it embraced within their plat of Zanesville. No partition of the lots in said town was made until after the death of Melntire, when it was effected upon the application of Zane. Melntire also owned other lands adjoining ‘Zane’s Grant,’ near to, and some of them adjoining the town of Zanesville. He directed, by his will, his executors to sell, so soon after his death as they might think proper, all his real estate, except *417 that,part of it lying within ‘Zane’s Grant,’ which last should be sold after the death of his wife. He directed that the proceeds of *such sales should be invested in a particular manner; and, upon the happening of the contingencies mentioned in the will, the rents, issues, and profits of all his estate were to bo appropriated to the support of his charity.”
Zanesville was then in its infancy. It was but beginning to grow; and it could not but have been contemplated by its original founder and proprietor, that it would, in process of time, expand itself greatly beyond the limits which, at that early day, served its municipal purposes. In fact, the bill shows that after the date of his will, to wit, on April 21, 1815, Mr. Mclntire laid out an addition to the town, and caused the plat to be recorded. His executors laid out another addition upon lands appropriated to this charity, subsequent to his death, but in pursuance of a plan formed by the testator himself.
It further appears from the bill, that as early as 1809, Mr. Mclntire laid out'lots numbered one to twenty, inclusive, on the west side of the Muskingum River, calling them “ additional lots annexed to the town of Zanesvillea plat of which was recorded prior to the passage of the act of incorporation of the date of January 21, 1814.
It seems that none of these last-mentioned additions to the town of Zanesville, laid out by Mr. Mclntire, and by his executor, are within the corporate limits of the “ Borough of Zanesville,” as it existed at the death of the testator; and, of consequence, if the rule of strict construction prevails, the children of citizens living in those precincts, although never so poor, must be debarred the privilege of attending the school. We do not thus interpret the will of John Mclntire. His object was to create a perpetual fund, the magnitude of which would be commensurate with the growth of the place and the wants of the people, to supply the means of education—not to the rich—not to those in moderate circumstances —but to the poor children in the town of Zanesville. A noble bequest! But could a heart .capable of such disinterested philanthropy, circumscribe, by mathematical lines, in the same town, the ^objects of its bounty ? More especially would the testator be supposed incapable of doing this in a growing manufacturing district, where the very class of people he is seeking by his bounty to elevate, are, by the pressure of circumstances, constantly forced *418 back from the center to the circumference; where, and where only, their poverty will allow them to live.
Wo advise that the trustees of this charity be not restricted in the selection of the “poor children ” who are to be admitted into their school, by any arbitrary lines, whether of town corporate, borough, or city; but that the fund be administered according to the dictates of that enlarged philanthropy which we may suppose actuated its founder in making the bequest. In this spirit let the almoners of John Mclntire’s bounty select the beneficiaries indiscriminately, from Zanesville, according to the popular acceptation of the term—not Zanesville on the east of the Muskingum—not Zanesville on the west—not Zanesville as it was—not Zanesville as it is ; but Zanesville as it may be found whenever the grateful •duty is to be performed.